INTER-MED, INC.,

      Plaintiff,

      v.                             Case No. 09-CV-383

ASI MEDICAL, INC.,

      Defendant.

# DECISION AND ORDER

## NATURE OF CASE

The plaintiff, Inter-Med, Inc., filed this action against the defendant, ASI Medical, Inc., alleging that the defendant is infringing U.S. Patent No. 6,464,498 (the '498 patent) which is assigned to Inter-Med and covers an "Irrigation Aspiration Device." (Amended Complaint at 2). The Irrigation Aspiration Device is used during endodontic procedures, such as root canals. The plaintiff alleges that defendant ASI Medical "manufactures, offers for sale, and sells irrigation devices that infringe at least one claim" of the '498 patent, as well as "manufactures, offers for sale, and sells irrigation devices that induce others to infringe at least one claim" of the same patent. Id. at 7.

On August 31, 2009, the plaintiff amended its complaint to include John McPeek, the president of ASI Medical, as an individual defendant. Defendant McPeek filed a motion to dismiss the amended complaint against him, which was granted by this court in an order dated August 2, 2010. As such, the only remaining defendant is ASI Medical.

Each party has submitted claim construction and responsive claim construction briefs, which will be addressed herein.  Claim 1 of the '498 patent is the only claim at issue requiring interpretation.

## CLAIM CONSTRUCTION

A patent infringement analysis involves two steps. The first step is determining the meaning and scope of the patent claim asserted to be infringed.  The second step is comparing the properly construed claims to the device accused of infringing it.  <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd. 517 U.S. 370 (1996); <u>Athletic Alternatives, Inc. v. Prince Mfg., Inc.</u>, 73 F.3d 1573, 1578 (Fed. Cir. 1996) (The two steps in a patent infringement analysis are: "the threshold construction of the meaning and scope of the asserted claim, followed by the determination whether the accused product infringes the properly construed claim.").  The function of the claims portion of a patent is to "define the invention to which the patentee is entitled the right to exclude." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting <u>Innova/Pure Water, Inc. v Safari Water Filtration Systems, Inc.</u> 381 F.3d 1111, 1115 [Fed. Cir. 2006]).

Claim construction is an issue of law to be determined by the court.  <u>Markman</u>, 517 U.S. at 389-90.  When interpreting a patent's claims, "the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the wording of the claims themselves, the specification and, if in evidence, the prosecution history."  <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citing <u>Markman</u>, 52 F.3d at 979).  Intrinsic evidence "is the most significant source of the legally operative meaning of disputed claim language." <u>Id.</u>

Extrinsic evidence consists of evidence external to the patent and prosecution history, such as expert and inventor testimony, learned treatises, and dictionaries.  Markman, 52 F.3d at 980.  The court may, in its discretion, receive extrinsic evidence which "is to be used for the court's understanding of the patent, not for the purpose of varying or contradicting the terms of its claims."  Id. at 981; Phillips, 415 F.3d at 1317 ("While extrinsic evidence 'can shed useful light on the relevant art,' . . .'it is less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'") (citations omitted).

The words of claim generally should be given their "ordinary and customary meaning."  Phillips, 415 F.3d at 1312.  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective date of filing the patent application."  Id. at 1313.  A person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  Id.

The claim term in question should be viewed in the context of other claims in the patent.  "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims."  Id.  In addition, "the presence of a dependent claim that adds a particular limitation gives rise to the presumption that the limitation in question is not present in the independent claims."  Id. at 1315 (citing Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 910 [Fed. Cir. 2004]).

The claims are "part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims.  For that reason, claims 'must be read in view of

the specification of which they are a part.'" Phillips, 415 F.3d at 1315 (quoting Markman, 52 F.3d at 978-79). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" Phillips, 415 F.3d at 1315 (quoting Vitronics, 90 F.3d at 1582). This is because Section 112 of the Patent Act, 35 U.S.C. § 112, requires that the specification portion of the patent describe the claimed invention in "full, clear, concise, and exact terms." 35 U.S.C. § 112, ¶1.

While the specification serves as "the primary basis for construing the claims," Standard Oil Co. v. Am. Cyanamide Co., 744 F.2d 448, 452 (Fed. Cir. 1985), the court should "avoid reading limitations from the specification into the claim." Phillips, 415 F.3d at 1323. A specification may describe a very particular embodiment of the invention, but the claims are not necessarily limited to that single embodiment. Id. "[T]he purposes of the specification are to teach and enable a person of ordinary skill in the art to make and use the invention and to provide the best means for doing so." Id. When looking to the specification to aid in claim construction, it is important to determine whether the patentee intends the embodiments in the specification to be mere examples or "whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive." Id.

Patentees may set forth claims in a more generic "means-plus-function" form in which the patentee claims the means for performing a specified function. 35 U.S.C. §112, ¶ 6. Section 112, ¶ 6 provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

However, the patentee must disclose "the specific structure(s) corresponding to that means in the patent specification." Kemco Sales, Inc. v. Control Papers, Co., 208 F.3d 1352, 1360 (Fed. Cir. 2000). "This duty to link or associate structure to function is the *quid pro quo* for the convenience for employing §112." B. Braun Medical, Inc. v. Abbot Laboratories, 124 F.3d 1419, 1424 (Fed. Cir. 1997).

Claims set forth in a "means-plus-function" form are construed according to a specialized two-step analysis. First, the court must determine the particular function of the claim. JVW Enterprises, Inc. v. Interact Accessories, Inc., 424 F.3d 1324, 1330 (Fed. Cir. 2005); (citing Omega Enterprises, Inc. v. Raytek Corp., 334 F.3d 1314, 1322 [Fed. Cir. 2003]); Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1333 (citing Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1376 [Fed. Cir. 2001]). The court is required to construe the function of a means-plus-function limitation "to include the limitations contained in the claim language, and only those limitations." Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 296 F.3d 1106, 1113 (Fed. Cir. 2002).

The second step in construing a means-plus-function claim limitation "is to look to the specification and identify the corresponding structure for that function." Golight, 355 F.3d at 1333; JVW Enterprises, 424 F.3d at 1321 (citing Omega Enterprises, 334 F.3d 1321). Under this step, "'structure disclosed in the specification is "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.'" Golight, 355 F.3d at 1334 (quoting Med. Instrumentations v. Diagnostics Corp v. Elekta, 344 F.3d 1205, 1210 (Fed. Cir. 2003) (other citations omitted).

## **ANALYSIS**

Here, the parties dispute only the meaning of certain portions of claim one. Claim one of the '498 Patent reads as follows:

An assembly for dispensing fluids and for evacuating a cavity during an endodontic procedure, the assembly comprising:

a handpiece including means for fluid discharge and means for evacuation;

at least one inlet and at least one outlet disposed on said handpiece;

a control mechanism disposed on said handpiece, the control mechanism controlling discharge and evacuation to and from said handpiece;

a surgical needle having a hollow shaft connected to said handpiece;

a connector communicating with said means for fluid discharge and said means for evacuation; and

said connector further including means for communicating with and supporting a surgical needle, said needle further including an external surface substantially coextensive of its length and a coextensive bore, said bore being arranged to communicate with said means for evacuation; said external surface of said needle being arranged for transport of a selected irrigation fluid, said irrigation fluid being transported along said external surface of said needle by way of needle surface tension gravity.

The court will address only the portions of claim one that are in dispute.

**Claim language to be construed – "a handpiece including means for fluid discharge and means for evacuation."**

Although the parties initially disputed the definition, in its responsive claim construction brief, the defendant stipulated to the definition proposed by the plaintiff. The definition is:

A handheld instrument including a fluid passageway to provide a pathway for fluid moving from a fluid source to a discharge nozzle and equivalents thereof and a pathway for evacuation of fluid and debris from the needle tip to an outlet reservoir or vacuum source and equivalents thereof.

**Claim language to be construed – "a control mechanism disposed on said handpiece, the control mechanism controlling discharge and evacuation to and from said handpiece."**

The parties agree on the meanings of "control mechanism," "disposed on," and "to and from said handpiece." "Control mechanism" is "a piece of machinery that controls whether and how an operation is undertaken." "Disposed on" is "located on." "To and from said handpiece" is "controlling fluid discharge from the handheld instrument and controlling evacuation to the handheld instrument."

The parties only dispute the meaning of "controlling discharge" and "controlling evacuation." The plaintiff submits that "controlling discharge" means "controlling discharge of a fluid," and that "controlling evacuation" means "controlling whether the previously discharged fluid is evacuated." (Plaintiff's Memorandum for *Markman* Claim Construction [Plaintiff's Memorandum] at 7).[1] In support of its proposed constructions, the plaintiff states only that the terms should be given their plain and ordinary meaning, and points to the relevant portion of the specification, which reads as follows:

---

[1] When the plaintiff sets forth its complete definition for this disputed claim language, it slightly alters its proposed definition by including the wording "and debris," so that the definition of "controlling discharge" reads as "controlling whether the previously discharged fluid and debris is evacuated." See Plaintiff's Memorandum at 8; Plaintiff's Reply to Defendant's Claim Construction Brief [Plaintiff's Reply] at 8.

> The control mechanism 24 controls whether fluid dispenses from the fluid
> discharge nozzle 20, aspirating vacuum is supplied to the aspiration nozzle 22,
> or a combination of irrigation and evacuation is performed. The switch 24 may
> also be provided with a finger-less lock-on feature that permits the switch to be
> maintained in an "on" position without the need for constant finger operation by
> the user. Alternatively, the handpiece may be provided with separate switches
> 24 for each aspiration or irrigation function.

('498 Patent, Col. 3, lines 20-29). The plaintiff maintains that the defendant's proposed constructions incorporate two limitations from the specification that are not included in the claim. Specifically, the plaintiff claims that the defendant's incorporation of the discharge and aspiration nozzles in its proposed constructions is improper. The plaintiff also asserts that its proffered construction correctly conveys that the discharge and evacuation occur simultaneously.

The defendant asserts that "controlling discharge" means "controlling whether fluid is dispensed from the discharge nozzle." (Defendant's Claim Construction Brief [Defendant's Brief] at 24). According to the defendant, "controlling evacuation" is "controlling whether aspirating vacuum is supplied to the aspiration nozzle." Id. at 25. The defendant maintains that its proposed constructions of "controlling discharge" and "controlling evacuation" are correct because they are more consistent with the specification and that the plaintiff does not rely on what the specification actually states. The defendant also asserts that the plaintiff's construction of "controlling discharge" is improper because it merely repeats the words of the claim and adds "of a fluid," thus adding no meaning to the disputed term. The defendant maintains that the plaintiff's proposed construction of "controlling evacuation" incorporates words – "previously discharged fluid" – found nowhere in the specification.

Looking to the patent as a whole and using the specification as "the primary basis for construing the claims," this court finds that the defendant's proposed constructions of "controlling discharge" and "controlling evacuation" more accurately reflect the plain and ordinary meaning of the terms as they would be understood by a person of ordinary skill in the art. Standard Oil, 744 F.2d at 452. The plaintiff's proposed construction of "controlling discharge" does not add meaning to the disputed term. Merely repeating the terms of a disputed claim is not sufficient. See U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1566-1568 (Fed. Cir. 1997) ("[C]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

Contrary to the plaintiff's assertions that the defendant's constructions import limitations from the specification, this court finds that the defendant's constructions are consistent with the specification. In fact, the defendant's constructions follow the wording of the specification. This court recognizes that there is a fine line between using the specification as a guide to interpreting the claim and importing limitations from the specification. See Phillips, 415 F.3d at 1323. However, a reading of the relevant portions of the specification reveals that, with respect to the control mechanism, the plaintiff "intends for the claims and the embodiments to be strictly coextensive." Id. Each time the control mechanism is mentioned in the specification, it is followed by the explanation that it "controls whether the fluid dispenses from a fluid discharge nozzle, aspirating vacuum is supplied to the aspiration nozzle, or a combination of irrigation and aspiration is performed." ('498 Patent, Col. 1, lines 52 -55;

Col. 3 lines 21-23).  At varying other points in the specification, including in the lines immediately following those quoted above, the plaintiff makes it clear that the part of the embodiment being described is merely an example or one of several alternatives.  For instance, the specification reads that "[t]he switch may also be provided with a finger-less lock-on feature," or the device "may be provided with separate switches for each aspiration or irrigation function."  ('498 Patent, Col. 3, lines 24-27).

The plaintiff also uses other wording such as "at least," "preferably," or "such as" in the specification to indicate ways in which the embodiment is merely an example.  ('498 Patent, Col. 3, line 29; Col. 3, lines 30, 45; Col. 3, line 62).  No such wording is used with respect to the relevant portions of the specification which address what the control mechanism controls. Therefore, it does not appear that the portion of the specification addressing the embodiment of the control mechanism is intended to be a mere example.  In response to the plaintiff's arguments that its own constructions more clearly convey that the discharge and evacuation occur simultaneously, this court finds nothing in the defendant's constructions that necessarily implies otherwise.

Therefore, this court finds that the construction most consistent with the patent as a whole is the defendant's proposed construction:

> a piece of machinery that controls whether and how an operation is undertaken,
> located on the handheld instrument, that controls whether fluid is dispensed from
> a discharge nozzle and whether aspirating vacuum is supplied to an aspiration
> nozzle, to control fluid discharge and evacuation from and to the handheld
> instrument.

**Claim language to be construed – "a connector communicating with said means for fluid discharge and said means for evacuation."**

The parties agree that "connector" is "a device that connects something." Initially, the parties disputed the meaning of "means for fluid discharge" and "means for fluid evacuation." However, as noted, after the filing of the initial briefs, the defendant stipulated to the meanings of these phrases. "Means for fluid discharge" is "a fluid passageway to provide a pathway for fluid moving from a fluid source to a discharge nozzle and equivalents thereof." "Means for evacuation" is "a pathway for evacuation of fluid and debris from the needle tip to an outlet reservoir or vacuum source." See Defendant's Responsive Claim Construction Brief (Defendant's Responsive Brief) at 4 and 10.

Thus, the parties only dispute the meaning of "communicating with." The plaintiff asserts that "communicating with" means "transmitting, working with or in connection with, means for fluid discharge and evacuation." (Plaintiff's Memorandum at 8). The plaintiff states that "the specification supports the plain and ordinary meaning of the terms 'communicating with.'" Id. However, the plaintiff does not explain how the specification supports its proposed construction, nor does the plaintiff cite to any materials such as dictionaries to support these definitions of the terms. In its responsive brief, the plaintiff does not address the meaning of "communicating with," but focuses only on the meaning of "means for fluid discharge" and "means for evacuation," even though the plaintiff acknowledged that the defendant had already stipulated to the meaning of these phrases.

The defendant maintains that "communicating with" means "two or more things that are open to each other." (Defendant's Brief at 26). In support of this construction, the defendant cites to a number of uses of the word "communicate" in the specification and argues that in each instance, the word refers to "multiple openings, bores, or passageways through which

fluid can pass from one to the next."  Id. at 28.  The defendant also submits that its proposed construction is consistent with the dictionary definition of "communicate," which is "to open into each other."  http://www.meriam-webster.com/dictionary/communicate.

While the dictionary definition is helpful to determine the proper meaning of "communicate," the patent itself must be this court's primary guide in interpreting the term. Standard Oil, 744 F.2d at 452.  This is especially so where, as here, there are several dictionary definitions for the disputed term.  See Phillips, 415 F.3d at 1321 ("[T]here may be a disconnect between the patentee's responsibility to describe and claim his invention, and the dictionary editors' objective of aggregating all possible definitions for particular words.").

First, this court looks to the other claims of the '498 Patent.  "Because claim terms are normally used consistently throughout the patent," a term's usage in one claim can often help interpret its meaning in the claim at issue.  Phillips, 415 F.3d at 1314.  A form of the word "communicate" is used six times in the claims.  However, one of these uses is in the following subpart of claim one – "said connector further including means for communicating with and supporting a surgical needle."   In that subpart, "communicate" is used as part of a means-plus-function term that is in dispute.  A specialized analysis must be applied to interpreting means-plus-function terms.   In addition, none of the parties' proposed constructions of "communicate" for this portion of claim one – a connector communicating with said means for fluid discharge and said means for evacuation – is also consistent with the use of "communicate" in the disputed means-plus-function clause.   Therefore, the use of "communicate" in the means-plus-function clause does not shed light on the meaning of

"communicate" in this disputed portion of claim one. However, the other uses of "communicate" in the claims all refer to an opening, bore or passageway of some kind, thus supporting the defendant's interpretation of the term.

Next, this court looks to the relevant portions of the specification. There are six uses of some form of "communicate" in the specification, all of which refer to an opening, bore or passageway of some kind that allows fluid to flow from one portion of the device to another. A form of the word "open" – the defendant's proposed construction – may be substituted for each of these uses of "communicate" without changing the meaning.

In contrast, when forms of the plaintiff's proposed construction – "transmitting, working with, or in connection with" – are substituted, the result is problematic. For example, the specification reads: "The bore 32 of the needle 30 communicates with the LUER® connector which allows the aspirate (not shown) to be carried through the aspiration nozzle 22 and out the fluid outlet 28." ('498 Patent, Col. 5, lines 5-8). Use of "transmits with" or "works with" in place of "communicates with" is no clearer than the use of "communicates." The words "transmit" and "work" seem to imply a kind of action on the part of the needle bore that is not occurring. Use of "in connection with" does not accurately convey that the connection between the needle and the LUER® connector is open. This proposed wording is also redundant as it is clear that the LUER® connector offers a connection. However, use of the wording "is open to" in place of "communicates with" more clearly and accurately conveys that the needle bore is open to the LUER® connector in a way that allows for the flow of fluid through the two pieces.

Accordingly, this court will construe "communicating with" as "two or more things that are open to each other." Thus, this portion of claim one will be construed as:

a device that connects something that is open to: 1) a fluid passageway to provide a pathway for fluid moving from a fluid source to a discharge nozzle and equivalents thereof, and 2) a pathway for evacuation of fluid and debris from the needle tip to an outlet reservoir or vacuum source and equivalents thereof.

**Claim language to be construed – "said connector further including means for communicating with and supporting a surgical needle, said needle further including an external surface substantially coextensive of its length and a coextensive bore, said bore being arranged to communicate with said means for evacuation; said external surface of said needle being arranged for transport of a selected irrigation fluid, said irrigation fluid being transported along said external surface of said needle by way of needle surface tension gravity."**

The only terms in dispute are the phrases, "means for communicating with a surgical needle" and "means for supporting a surgical needle." Because this language is in means-plus-function format, the function first must be determined. Then, the corresponding structure in the specification must be identified. See Golight, 355 F.3d at 1333.

The plaintiff does not clearly set forth a function for "means for communicating with a surgical needle." Instead, the plaintiff states only that "'[m]eans for communicating with a surgical needle' should be should be given its plain and ordinary meaning, i.e., something for transmitting with, working with, or in connection with a surgical needle.'" (Plaintiff's Memorandum at 10).

The plaintiff asserts that the corresponding structure is, "[t]he bore 32 of the needle 30 communicates with the LUER® connector 40 which allows the aspirate (not shown) to be carried through the aspiration nozzle 22 and out the fluid outlet 28 (seen in FIG. 1)." Id. (quoting '498 Patent, Col. 5, lines 5-9). In support of this construction, the plaintiff states that

the wording should be given its plain and ordinary meaning and cites to the same section of the specification as well as this sentence: "Aspiration of the site is done through the needle bore 32, as indicated by the arrows in FIG. 4." Id. (quoting '498 Patent, Col. 5, lines 4-5). The plaintiff contends that the proper construction of the entire phrase is "a connector or similar device that allows aspirate to be carried, which is in communication with, i.e. something for transmitting with, working with, or in connection with a surgical needle, and equivalents thereof." (Plaintiff's Memorandum at 10).

The plaintiff maintains that the defendant's proposed construction of "means for communicating with a surgical needle" impermissibly incorporates limitations from the specification. In addition, the plaintiff asserts that the defendant's proposed construction violates the principle of claim differentiation, which presumes that each claim in a patent covers something different.

Regarding the phrase, "means for supporting a surgical needle," the plaintiff states that it "should be given its plain and ordinary meaning, i.e. something for bearing, maintaining, mounting upon, holding up, or sustaining a surgical needle." Id. According to the plaintiff, the corresponding structure is described in two sections of the patent. "'The needle 30 is preferably mounted on a hub member or hub apparatus 38 . . . and is arranged for mating with a conventional LUER® connector 40.'" Id. (quoting the '498 Patent, Col. 3, lines 36-40). "'The needle shaft 32 . . . is supported by the hub member 38 to provide connection with a conventional LUER® lock 40.'" Id. (quoting the '498 Patent, Col. 4, lines 35-40). The plaintiff maintains that the proper construction of the entire phrase is "a hub member or device that

provides a structure for mating with a needle or mounting a needle and equivalents thereof."
Id.

The plaintiff contends that the defendant's proposed construction of "means for supporting a surgical needle" impermissibly incorporates limitations from the specification and violates the principle of claim differentiation. Thus, the plaintiff's proposed construction for the complete claim term "said connector further including means for communicating with and supporting a surgical needle," is as follows:

> a device that connects something with that device further allowing a structure that allows aspirate to be carried, which is in communication with, i.e. something for transmitting with, working with, or in connection with a surgical needle, and equivalents thereof and also including a hub member or device that provides a structure for mating with a needle or mounting a needle and equivalents thereof.

(Plaintiff's Memorandum at 11).

The defendant begins its construction by identifying the function of "means for communicating with a surgical needle." While the defendant previously construed "communicating with" as meaning "two or more things that are open to each other," this definition is inappropriate with respect to the "means for communicating with a needle" because the referenced connector and the needle are not open to one another. Rather, the needle is positioned through the first leg of the connector. Thus, the defendant contends that the proper function is "maintaining a surgical needle through a connector."

The defendant then looks to the specification and identifies the structure that corresponds to the means for "maintaining a surgical needle through a connector." The defendant cites several sections of the specification which address how the needle is

positioned through the connector.  <u>See</u> Defendant's Brief at 32-34.  The defendant submits that the corresponding structure is "a needle 30 positioned in a first leg aperture 54a and through a first leg 48a of the through-bore 50, such that the attachment end 36 of the needle 30 is simultaneously positioned through a third aperture 56; and equivalents thereof."  <u>Id.</u> at 34 (quoting '498 Patent, Col. 4, lines 30-33).

The defendant asserts that the plaintiff's proposed construction of "means for communication with a surgical needle" is incorrect in several ways.  The defendant states that the plaintiff failed to identify the function as required by the means-plus-function analysis.  In addition, the defendant asserts that it is incorrect to apply the "ordinary and plain meaning" claim construction rule to claims written in means-plus-function form.  Rather, the defendant asserts that relying only on the ordinary and plain meaning of a term in a means-plus-function analysis may result in a construction that is overly broad in scope, citing <u>Biodex Corp v. Loredan Biomedical, Inc.</u>, 946 F.2d 850, 863 (Fed. Cir. 1991).

The defendant further contends that the plaintiff relies on the incorrect portions of the specification to arrive at the corresponding structure for "means for communicating with a surgical needle."  The defendant maintains that the sections of the specification relied on by the plaintiff discuss the LUER® connector, not the L-shaped connector.  According to the defendant, because the claim term at issue begins with "said connector," the connector it refers to must have been previously referenced in claim one.  The only connector referenced in claim one is "a connector communicating with said means for fluid discharge and said means for fluid evacuation."  ('498 Patent, Col. 6, lines 4-5).  Because the LUER® connector does not

communicate with both the means for fluid discharge and the means for fluid evacuation, the defendant states that the proper connector is the L-shaped connector.

The defendant also takes issue with the plaintiff's contention that its proposed construction violates the principle of claim differentiation. The defendant asserts that claim differentiation "cannot override the statutory requirements of 35 U.S.C. § 112, ¶ 6." (Defendant's Responsive Brief at 14).

The defendant identifies the function of "means for supporting a surgical needle" as "attaching the needle to the handpiece." In support, the defendant relies on the specification and notes that the passage which describes supporting the needle is referring to the attachment of the needle to the handpiece.

The defendant then looks to several sections of the specification to identify the corresponding structure. <u>See</u> Defendant's Brief at 34-35. The defendant contends that the structure corresponding to the means for "attaching the needle to the handpiece" is:

> a first leg aperture 54a and a first leg 48a of a through-bore 50, such that the attachment end 36 of the needle 30 is simultaneously positioned through the third aperture 56 and the first leg 48a such that the needle shaft 32 is grippingly received in the first leg 48a, while the attachment end 36 extends through the third aperture 56 and is supported by the supporting hub member 38 to provide connection with a conventional LUER® lock 40; and equivalents thereof.

<u>Id.</u>

The defendant maintains that the plaintiff is mistakenly relying on the LUER® lock as the connector referenced in this portion of claim one. The result is that the plaintiff's recitation of the structure is improperly truncated. Thus, the defendant contends that the entire phrase, "said connector further including means for communicating with and supporting a surgical needle," should be construed as:

said device for connecting objects with one another further including a first leg aperture and a first leg of a through-bore, such that the attachment end of the needle is simultaneously positioned through the third aperture and the first leg such that the needle shaft is grippingly received in the first leg, while the attachment end extends through the third aperture and is supported by the supporting hub member to provide connection with a conventional LUER® lock; and equivalents thereof

This court will address "said connector further including means for communicating with and supporting a surgical needle" as two separate phrases – means for communicating and means for supporting – as the parties did. As an initial matter, however, there seems to be a discrepancy between the parties regarding which connector is intended by the phrase "said connector." The plaintiff's constructions of these claim terms use the LUER® lock connector as a point of reference when setting forth the functions and the corresponding means. The defendant's constructions of these claim terms use the L-shaped connector as a point of reference when setting forth the functions and corresponding means. Because the claim term begins with "said connector" it must be referring to a connector previously mentioned in claim one. The only connector previously mentioned in claim one communicates with both the means for fluid discharge and the means for fluid evacuation, which the LUER® lock does not do. Thus, the L-shaped connector must be the connector intended by the wording "said connector."

In accordance with the specialized analysis utilized for means-plus-function claims the function of the "means for communicating with a surgical needle," must first be identified. The plaintiff does not explicitly identify a function, but seems to rely on its earlier interpretation of "communicating with" – transmitting, working with, or in connection with. However, a review of

the specification reveals that the needle does not "transmit, work with, or in connection with" with the L-shaped connector.  Nothing in the specification or the drawings indicates that there is transmission between the connector and the needle, or that the needle and the connector work with or in connection with each other.  Rather, the needle is inserted through the L-shaped connector – thereby allowing communication between the needle bore and the aspiration nozzle through the LUER® lock connector.

The plaintiff asserts that "communicate" should be given its plain and ordinary meaning, but as previously noted, fails to persuade this court that "transmit, work with, or in connection with" is the plain and ordinary meaning of that word.  More importantly, however, the plaintiff ignores the strictures of claim construction when it comes to the specialized analysis applied to claims in means-plus-function form.  The Court of Appeals for the Federal Circuit has explicitly warned that the "'plain meaning' of such a claim, without resort to limiting features contained in the specification, the prosecution history, and a factual inquiry into equivalents, might create an erroneously broad scope." Biodex Corp. v. Loredan Biomedical, Inc., 946 F.2d 850, 863 (Fed. Cir. 1991).  Therefore, this court finds that the function proposed by the defendant, "maintaining a surgical needle," is more consistent with the patent.

The court also must identify the corresponding means in the specification for "maintaining a surgical needle."  The plaintiff's proposed structure incorrectly begins with the LUER® lock connector.   On the other hand, this court is cognizant of the principle of claim differentiation, and that the defendant's proposed construction incorporates limits which are also found in dependent claims 3 and 4.  But the Federal Circuit has held that "[c]laim

differentiation is a guide, not a rigid rule." <u>Laitram Corp. v. Rexnord, Inc.</u>, 939 F.2d 1533, 1538 (Fed. Cir. 1991)(quoting <u>Autogiro Co. of America v. United States</u>, 181 Ct. Cl. 55, 384 F.2d 391, 404, 155 U.S.P.Q. [BNA] 697, 708 [1967]). "A means-plus-function limitation is not made open-ended by the presence of another claim specifically claiming the disclosed structure which underlies the means clause or an equivalent of that structure." <u>Laitram</u>, 939 F.2d at 1538. Therefore, this court adopts the defendant's construction of "means for communicating with a surgical needle."

With respect to the construction of "means for supporting a surgical needle," the plaintiff does not explicitly set forth a function, but seems to identify the function as a structure for mating or mounting a needle. However, the mounting or mating that the plaintiff relies on in the specification occurs between the needle and the LUER® lock connector, not the L-shaped connector. The defendant's proposed function, "attaching the needle to the handpiece," is therefore the more accurate function.

Similarly, the corresponding structure identified by the plaintiff uses as its point of reference the LUER® lock connector, which the court has determined in the incorrect connector, not the L-shaped connector. Therefore, the defendant's proposed structure is more appropriate. Accordingly, the construction of the full term, "said connector further including means for communication with and supporting a surgical needle" is:

> said device for connecting objects with one another further including a first leg aperture and a first leg of a through-bore, such that the attachment end of the needle is simultaneously positioned through the third aperture and the first leg such that the needle shaft is grippingly received in the first leg, while the attachment end extends through the third aperture and is supported by the

supporting hub member to provide connection with a conventional LUER® lock; and equivalents thereof.

For the reasons stated herein, the court will construe the disputed language in claim one of the '498 Patent as set forth herein.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the disputed language in claim one of the '498 Patent will be and hereby is construed as set forth in this order.

**IT IS FURTHER ORDERED** that the parties shall appear for a status conference on September 15, 2011, at 1:30 p.m. in courtroom #282.

Dated at Milwaukee, Wisconsin this 31st day of August, 2011.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge